UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

**FILED**

SEP 0 1 2020

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

UNITED STATES OF AMERICA, )
)
Plaintiff, ) **SEALED**
)
v. ) CAUSE NO.: 1:20-CR-
)
JEFFREY GASIOR, ) (UNDER SEAL)
)
Defendant. )

1: 20 -cr- 0 2 1 4 SEB -MJD

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS FOR ALL COUNTS

At times material to all Counts of this Indictment:

1. Company A was an advertising and public relations agency based in Indianapolis, Indiana.

2. JEFFREY GASIOR, a resident of Carmel, Indiana, was hired by Company A on or about May 21, 2018 as Vice President of Digital to build Company A's Digital Media Buying practice as an in-service offering. GASIOR was in charge of sales, strategy development, coordination, and analysis of digital advertising on behalf of Company A's clients. In or about the fall of 2018, GASIOR was given access to Company A credit cards to purchase media on behalf of clients and to request reimbursement for expenses.

3. Stripe.com ("Stripe") and PayPal.com ("PayPal") were payment processing platforms that, among other things, allowed subscribers to transfer money to and from the subscriber's bank account and the bank account of another person and/or business by way of a

1

credit or debit card transaction. Businesses could create merchant accounts with Stripe and PayPal to accept credit and debit card payments from customers. The processed funds would then be transferred to the merchant company's designed bank account.

4. Company A held bank accounts with Huntington National Bank. Huntington National Bank was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC).

## COUNTS 1 – 11
### Bank Fraud
### 18 U.S.C. § 1344(2)

5. Between in or about October 2018 and on or about August 6, 2019, as specified in each separate Count below, within the Southern District of Indiana and elsewhere,

**JEFFREY GASIOR,**

the Defendant herein, knowingly and with the intent to defraud, executed and attempted to execute, the following scheme or artifice to obtain money, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution – Company A's Huntington National Bank account – by means of false or fraudulent pretenses, representations, and promises (the "Scheme").

### The Scheme

6. GASIOR created and falsified invoices, expense reports, and other records for purported Company A expenses and credit card payments that were not incurred, redirected these Company A payments to his personal bank account, used unapproved payment systems, and falsely represented digital advertising work on Company A's behalf, in order to receive payments from Company A that he was not entitled to.

7. GASIOR generated, created, and submitted the false and fictitious invoices,

2

expense reports, and records to Company A for a variety of purposes, including:

   a. To provide to Company A's accounting department with receipts for personal expense reimbursement indicating that he had to pay vendors using his personal credit card, whereas those expenses never occurred;

   b. To substantiate transactions where he charged a Company A credit card using PayPal or Stripe.com, whereas the stated purpose for that payment did not occur; and

   c. To validate a fictitious merchant account with Stripe.com in the name of Company A to perpetuate the fraud.

8. As a result of the false and fraudulent pretenses, representations, and promises to Company A, GASIOR obtained over $700,000 of Company A funds held at Huntington National Bank and diverted those funds to himself and others without the knowledge and authorization of Company A.

## A. Stripe Merchant Account Transactions

9. In furtherance of the Scheme, GASIOR set up a merchant account with Stripe.com on behalf of Company A beginning on or about April 9, 2019. The creation of the Stripe merchant account was not known to or authorized by Company A, and the activity on the Stripe merchant account also occurred without anyone at Company A's knowledge or authorization.

10. On or about April 17, 2017, Stripe.com requested copies of Company A invoices to validate the use of the merchant account. That same day, GASIOR emailed a subordinate at Company A for a copy of the Company A logo, which was emailed back to him. GASIOR used that Company A logo to create two fake Company A invoices through a website called Invoice-

Generator.com, copies of which were sent to GASIOR via email. GASIOR then emailed those two fake invoices to Stripe.com to validate the new Stripe merchant account.

11. From in or about April 2019 through in or about August 2019, GASIOR made over $373,000 in purported credit card payments through Stripe using Company A's Huntington National Bank credit card ending in 8464.

12. GASIOR explained to Company A's accounting department that these charges were payments or pre-payments to vendors such as LinkedIn, Twitter, Reddit, Pandora, Centro, and a variety of other social media sites that were used or would ultimately be used for upcoming client media buys.

13. Instead, GASIOR transferred the money to himself. GASIOR linked the Stripe account to his personal bank account. From in or about April 2019 through in or about August 2019, GASIOR diverted over $373,000 of Company A's funds from Company A's Huntington Bank account to GASIOR's personal bank account, including but not limited to the specific transactions described in Counts 1 through 4 below.

14. GASIOR provided fake invoices, receipts, and other records to Company A to conceal the fraud.

**B.  Expense Report Transactions**

15. In furtherance of the Scheme, GASIOR also generated and submitted fictitious expense reports to Company A, requesting reimbursement for alleged payments to vendors that GASIOR claimed were spent using his personal credit card. In actuality, these payments to vendors did not occur and no such expenses existed on GASIOR's personal credit card.

16. GASIOR generated, created, and provided fake invoices to Company A to conceal the fraud. On certain occasions, GASIOR also created and submitted fake personal

4

bank statements reflecting the purported payments to vendors.

17. On a few occasions, at GASIOR's direction, an employee at Company A used her personal credit card to make PayPal payments on GASIOR's behalf to an alleged vendor when GASIOR claimed that he was unable to use his own cards. In actuality, there was no vendor to be paid, and the money was used by GASIOR. That employee subsequently submitted expense reports for the payments and GASIOR provided fake invoices to Company A in support of those expense reports. The Company A employee was not aware and did not have any knowledge that the invoices were fake or that the money was being paid to or on GASIOR's behalf.

18. GASIOR received checks from Company A for most of these reimbursements, which he deposited into his personal bank account. On some occasions, the money was instead deposited into a PayPal account operated by GASIOR, who then sent the money to other individuals unrelated and unknown to Company A.

19. From in or about November 2018 through in or about April 2019, GASIOR submitted or caused others to submit fraudulent expense reports to Company A. GASIOR received reimbursement from Company A's Huntington Bank account for over $215,000 in fraudulent expenses. The fraudulent expense report transactions that were paid out of Company A's Huntington Bank account include but were not limited to the specific transactions listed in Counts 5 and 6 below.

## C. PayPal Account Transactions

20. In or about October 2018, GASIOR convinced Company A to use PayPal to pay for media. GASIOR linked Company A credit cards to various PayPal accounts controlled by GASIOR to process payments.

21. GASIOR used Company A Huntington Bank credit cards – both Company A and

5

specific Company A employee credit cards – to pay into the PayPal account. GASIOR represented to Company A that such payments into the PayPal account were to be used for media buys and other related payments on behalf of Company A clients. However, none of the represented media buys or payments actually occurred. Instead, GASIOR then used that money in the PayPal account to make payments to many different individuals. None of the individuals who received money from GASIOR were associated to Company A, Company A clients, or Company A vendors.

22. GASIOR also paid some of these same recipients directly with Company A credit cards through PayPal.

23. On many occasions, GASIOR generated, created, and provided fake invoices and records to Company A to justify the PayPal transactions.

24. Additionally, GASIOR accessed and used a subordinate's personal PayPal account, who authorized the use of the account but was unaware GASIOR was using it to make unauthorized payments with a Company A credit card.

25. From on or about October 24, 2018 through on or about August 2019, GASIOR received over $164,000 of fraudulent funds from Company A's Huntington Bank account into PayPal accounts that GASIOR controlled. GASIOR transferred the money from the PayPal accounts to himself and others, including but not limited to the specific transactions described in Counts 7 through 11 below.

26. GASIOR was terminated from Company A in or about August 2019. GASIOR attempted to delete emails from his Company A email account. GASIOR also contacted Stripe.com and attempted to delete information from the unauthorized Stripe merchant account.

## Specific Transactions

27. As a result of the Scheme described herein, GASIOR obtained over $700,000 of Company A funds held by Huntington National Bank and diverted those funds to himself and others, including but not limited to the following transactions:

**Company A Payments to Stripe Merchant Account:**

| Count | Date of Stripe Payment (on or about) | Company A Credit Card (last 4 digits) | Stripe Invoice Ref. Number | Amount of Payment | Stripe Transfer to GASIOR's Personal Bank Account (on or about) |
|---|---|---|---|---|---|
| 1 | 6/17/19 | 8464 | 14541218-014 | $17,500 | Transfer of $16,992.20 on 6/19/2019 to GASIOR's personal bank account |
| 2 | 6/25/19 | 8464 | 14541218-015 | $39,500 | Transfer of $38,354.20 on 6/27/19 into GASIOR's personal bank account |
| 3 | 7/2/19 | 8464 | 14541218-017 | $10,250 | Transfer of $38,839.40 on 7/5/19 into GASIOR's personal bank account |
| 4 | 7/2/19 | 8464 | 14541218-018 | $29,750 | |

**Company A Payments for Expense Reports Submitted:**

| Count | Company A Expense Report Number | Deposit of Company A Check (on or about) | Deposit Amount | Deposit Bank Account |
|---|---|---|---|---|
| 5 | EXP-2925, EXP-2926, EXP, 2927 | 12/18/2018 | $19,059.76 | GASIOR's personal bank account |
| 6 | EXP-23 | 4/01/2019 | $50,000.00 | GASIOR's personal bank account and cashier's checks |

## Company A Payment to PayPal:

| Count | Date of Payment (on or about) | Company A Credit Card (last 4 digits) | PayPal Account | Amount of Payment (after fees) | PayPal Payments With Company A Funds |
|---|---|---|---|---|---|
| 7 | 10/24/2018 | 9983 | 7469 | $3,000 ($2,970.20) | Payment of $2,900 from PayPal Account ending in 7469 to "Neil Patel" on 10/24/2018 |
| 8 | 10/29/2018 | 7223 | 7469 | $11,000 ($10,680.70) | Payment of $10,556 from PayPal Account ending in 7469 to "Neil Patel," "David Stall", "David Penna" and Brenden Boothe" from 10/29/2018 – 11/01/2018 |
| 9 | 11/16/2018 | 8464 | 7469 | $3,087.30 ($3,000) | Direct payment of $3,000 to "Neil Patel" from Company A credit card ending in 8464 through PayPal account ending in 7469 |
| 10 | 3/18/2019 | 8975 | 2884 | $8,232.30 ($8,000) | Direct payment of $8,000 to "Chris Hutchinson" from Company A credit card ending in 8975 through PayPal account ending in 2884. |
| 11 | 8/02/19 | 8975 | 2884 | $8,232.30 ($8,000) | Direct payment of $8,000 to "Flashman Consulting" from Company A credit card ending in 8975 thorugh PayPal account ending in 2884 |

Each Count of which is a separate violation of Title 18, United States Code, Section 1344(2).

8

## COUNT 12

### Aggravated Identity Theft
### 18 U.S.C. § 1028A(a)(1) and (c)(5)

28. On or about April 1, 2019, within the Southern District of Indiana and elsewhere,

**JEFFREY GASIOR,**

the Defendant herein, during and in relation to the foregoing felony violation of Title 18, United States Code, Section 1344(2) (bank fraud) as alleged in Count 6 above, knowingly used, without lawful authority, a means of identification of another person, in and affecting interstate commerce, that is, the Defendant used the name and email address of D.M. of Pandora without D.M.'s knowledge or authorization, to create a fictitious email that appeared to be written by D.M., that was submitted to Company A to justify GASIOR's $50,000 fraudulent expense report (EXP-23) described in Count 6.

All of which is a violation of Title 18, United States Code, Section 1028A(a)(1) and (c)(5).

## FORFEITURE ALLEGATION

1. Pursuant to Federal Rule of Criminal Pursuant to Federal Rule of Criminal Procedure 32.2, the United States hereby notifies the Defendant that it will seek forfeiture of property pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(A), and Title 28, United States Code, Section 2461.

2. If convicted of one or more of the offenses set forth in the Indictment, the Defendant **JEFFREY GASIOR,** shall forfeit to the United States all right, title and interest the Defendant has in:

   a. any personal property used or intended to be used to commit the offense;

   b. any property, real or personal, involved in these offenses, or any property traceable to such property; and

   c. any property constituting or derived from proceeds the Defendant obtained directly or indirectly as a result of the offense.

   d. a sum of money equal to the total amount of the proceeds the defendants obtained as the result of the offenses set forth in the offenses of which the defendants are convicted and the total value of the property involved in these offenses.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Sections 982(b) and Title 28, United States Code, Section 2461(c), the court shall order the forfeiture of any other property of the Defendant, up to the value of any property described herein if, by any act or omission of the Defendant, the property described herein, or any portion thereof:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty.

4. In keeping with the foregoing, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendant up to the value of all forfeitable property as described above.

A TRUE BILL:

FOREPERSON

JOSH MINKLER
UNITED STATES ATTORNEY

by: MaryAnn T. Mindrum
Assistant United States Attorney